# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TRENT K. DANIELS,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:20-00561-N** |
| | ) | |
| **KILOLO KIJAKAZI,** *Acting* | ) | |
| ***Commissioner of Social Security*,** | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Trent K. Daniels brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying his applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.[1] Upon due consideration of the parties' briefs (Docs. 18, 19) and those portions of the certified transcript of the administrative record (Doc. 15) relevant to the issues raised, the Court finds that the Commissioner's final decision is due to be **REVERSED** and **REMANDED** for further administrative proceedings.[2]

---

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

[2]      With the consent of the parties, the Court has designated the undersigned

## I.   *Procedural Background*

Daniels filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on September 25, 2015. After they were initially denied, Daniels requested, and on May 7, 2020, received, a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. On May 28, 2020, the ALJ issued an unfavorable decision on Daniels's applications, finding him not disabled under the Social Security Act and therefore not entitled to benefits. (*See* Doc. 15, PageID.82-98).

The Commissioner's decision on Daniels's applications became final when the Appeals Council for the Office of Disability Adjudication and Review denied his request for review of the ALJ's unfavorable decision on September 29, 2020. (*Id.*, PageID.67-71).[3] Daniels subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section

---

Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 21, 23).

With the Court's consent, the parties jointly waived the opportunity to present oral argument. (*See* Docs. 22, 24).

[3] After holding an October 16, 2017 hearing, the first ALJ assigned to Daniels's case issued an unfavorable decision on July 6, 2018. (*See* Doc. 15, PageID.177-190). However, after Daniels raised a challenge under the Appointments Clause of the U.S. Constitution to the manner in which the first ALJ was appointed, the Appeals Council vacated the 2018 unfavorable decision and remanded Daniels's case to a different ALJ for a new hearing and decision. (*Id.*, PageID.191-193). The second ALJ's decision constitutes the Commissioner's final decision subject to review in this action.

405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II.   *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). *See also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("A preponderance of the evidence is not required. In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings." (citation omitted)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support

multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter*, 808 F.3d at 822 ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) (unpublished) ("The question is not, as Werner suggests, whether ALJ could have reasonably credited his testimony, but whether the ALJ was clearly wrong to discredit it." (footnote omitted)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").[5]

_____

[5] However, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district

The "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). " 'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.' " *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v.*

---

court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding.").

*Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)."). Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir. 2019) (per curiam) (unpublished)[6] ("Agency actions … must be upheld on

---

[6] In this circuit, "[u]npublished opinions are not considered binding precedent, but

the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton,* 209 F.3d at 455)).

Eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel,* 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips,* 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore,*

---

they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his

claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, " 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.' " *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III.   *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Daniels met the applicable insured status requirements for DIB through December 31, 2020, and that he had not engaged in substantial gainful activity since the alleged disability onset date of September 21, 2015.[8] (Doc. 15, PageID.87). At Step Two,[9] the ALJ determined that Daniels had the following medically determinable impairments: hypertension, acid reflux disease, vitamin deficiency, and allergic rhinitis. (Doc. 15, PageID.87). However, the ALJ found that Daniels did not have a "severe" impairment or combination of impairments because he did "not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months." (*Id.*, PageID.87-92).[10] Accordingly, the ALJ did not proceed to the remaining steps of the

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[9] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153.

[10] *See* 20 C.F.R. §§ 404.1509, 416.909 ("Unless your impairment is expected to result

sequential evaluation, and found that Daniels was not under a disability as defined by the Social Security Act from the disability onset date through the date of the ALJ's decision. (*Id.*, PageID.92).

## IV.   *Analysis*

Daniels argues the ALJ reversibly erred in finding he had no severe impairment, and alternatively, by failing his duty to develop the record by not ordering an additional consultative examination "to better determine [Daniels's] physical capabilities." Upon due consideration, the Court is unable to address whether the ALJ was wrong to find no severe impairment because the ALJ did not adequately fulfill his duty to develop the record, though for a different reason than Daniels asserts.[11]

The ALJ denied Daniels's application at Step Two, which "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam)

_____

in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."); 20 C.F.R. §§ 404.1523(a)-(b), 416.923(a)-(b) ("We cannot combine two or more unrelated severe impairments to meet the 12–month duration test. If you have a severe impairment(s) and then develop another unrelated severe impairment(s) but neither one is expected to last for 12 months, we cannot find you disabled, even though the two impairments in combination last for 12 months … If you have two or more concurrent impairments that, when considered in combination, are severe, we must determine whether the combined effect of your impairments can be expected to continue to be severe for 12 months. If one or more of your impairments improves or is expected to improve within 12 months, so that the combined effect of your remaining impairments is no longer severe, we will find that you do not meet the 12–month duration test.").

[11] Nevertheless, Daniels adequately raised the issue on which remand is based in asserting his claims.

(quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "This step acts as a filter; if no severe impairment is shown the claim is denied, but the finding of any severe impairment, whether or not it qualifies as a disability and whether or not it results from a single severe impairment or a combination of impairments that together qualify as severe, is enough to satisfy the requirement of step two." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). *See also* 20 C.F.R. §§ 404.1520(c), 416.920(c).

The Social Security regulations explain that "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). *See also* 20 C.F.R. §§ 404.1520(c), 416.920(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). "[B]asic work activities … mean the abilities and aptitudes necessary to do most jobs. Examples of these include—(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." 20 C.F.R. §§ 404.1522(b), 416.922(b). For its part, the Eleventh Circuit Court of Appeals has held that "an 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be

expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

The ALJ took note of Daniels's complaints of lower back pain made at the hearing and throughout the treatment notes of record. However, the ALJ found that Daniels's complaints of " 'neck and back pain' d[id] not amount to an impairment that can form the basis of a finding of disability[,]" explaining:

> The scant medical records do not contain objective evidence to support the finding of a musculoskeletal impairment resulting in the symptoms alleged. In fact, the record contains only complaints of pain that are not substantiated by abnormal objective medical findings, testing, or imaging. An impairment is something that must result from anatomical, physiological or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques … While it is possible that "neck and back pain" may be symptoms of some anatomical or physiological abnormality, pain is not itself considered to be an impairment in that sense. The record is devoid of any objective confirmation of an impairment of the neck or back even though there have been some instances where the claimant has complained of pain in his neck or back. That is, the record does not contain any assessment of a condition through clinical and laboratory diagnostic techniques by which a neck or back impairment can be verified. Amplifying this point, Social Security Ruling 96-4p states, "No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment."

(Doc. 15, PageID.89).

"In determining whether [a claimant is] disabled, [the Commissioner will] consider all [the claimant's] symptoms, including pain, and the extent to which

[those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The Commissioner] will consider all of [the claimant's] statements about [his or her] symptoms, such as pain, and any description [his or her] medical sources or nonmedical sources may provide about how the symptoms affect [his or her] activities of daily living and … ability to work. However, statements about [a claimant's] pain or other symptoms will not alone establish that [the claimant is] disabled. There must be objective medical evidence from an acceptable medical source that shows [the claimant has] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled." 20 C.F.R. §§ 404.1529(a), 416.929(a).

Relatedly, an impairment must be found "medically determinable" before it can be found "severe," meaning that it "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques[--i.e.,] by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. A claimant's "statement of symptoms, a diagnosis, or a medical opinion [cannot] establish the existence of an impairment(s)." *Id.*

Thus, the ALJ was correct in explaining that Daniels's complaints of pain, no matter how acute, could not establish the existence of a medically determinable

impairment, either "severe" or not. Rather, it must be shown by objective medical evidence showing some abnormality from which Daniels's pain could reasonably be expected to result. However, Daniels argues the report of consultative examining physician Huey Kidd, D.O., establishes that he has a medically determinable impairment of his lumbar spine which could reasonably produce his pain, and that the opinions of Dr. Kidd and Daniels's treating physician, Bernita Mims, M.D., show that this impairment is "severe."

Dr. Kidd performed a consultative examination of Daniels at the Commissioner's request. The ALJ noted that Dr. Kidd assessed "low back pain with lumbar radiculopathy[,]" but the ALJ explained: "Beyond the inconsistent examining findings, the undersigned will point out that 'pain' is not an impairment under Social Security regulations and that radiculopathy, in the absence of a generative source, would technically be simply another type of pain, i.e., radiating pain, and thus not an impairment either. Under Social Security regulations, the undersigned is unable to find a recognizably diagnosed impairment from the examination. Notably, Dr. Kidd did not diagnose lumbar disc or joint disease or even neuropathy." (Doc. 15, PageID.92). In short, the ALJ found that Dr. Kidd's report did not show the existence of a medically determinable impairment that could give rise to Daniels's pain.

Daniels correctly notes that, as part of his examination, Dr. Kidd billed the Commissioner $35 for "X-ray of L-S Spine, A-P and Lat. (P&I)." (*Id.*, PageID.468). The single decision maker (SDM) who denied Daniels's applications at the initial level, and who found that Daniels had a severe impairment of "Disorders of Back-

Discogenic and Degenerative" (*id.*, PageID.161, 170), noted, when discussing Dr. Kidd's report: "XR LSPINE: mild ddd L5-S1." (*Id.*, PageID.160, 169). The Commissioner does not appear to dispute that Dr. Kidd did in fact take x-rays as part of his consultative examination of Daniels. However, those x-rays are not in the certified transcript of the administrative record that has been presented to this Court, and, as both parties correctly note, Dr. Kidd did not mention x-rays in his report. (*See id.*, PageID.469-471). How, then did the SDM know about them, much less that they purported to show "mild ddd L5-S1"?

The Commissioner is charged with the duty "to weigh the evidence, **to resolve material conflicts in the testimony**, and to determine the case accordingly." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam) (emphasis added). Moreover, "[i]t is well-established that the ALJ has a basic duty to develop a full and fair record[,]" *Ellison*, 355 F.3d at 1276, though "there must be a showing of prejudice before we will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam). Where "the record reveals evidentiary gaps which result in unfairness or clear prejudice[,]" remand may be required. *Id.* (quotations omitted).

The undersigned finds that Dr. Kidd's missing x-rays constitute an evidentiary gap that resulted in clear prejudice to Daniels. Alternatively, SDM's apparent reliance on those missing x-rays was a "material conflict" in the record. Recall that the ALJ found the record "devoid of *any* objective confirmation of an impairment of

the neck or back" (emphasis added) as grounds for finding no medically determinable

impairment related to Daniels's numerous pain complaints. However, Dr. Kidd billed

the Commissioner for obtaining x-rays of Daniels's spine as part of his consultative

examination, he diagnosed "low back pain with lumbar radiculopathy," and the SDM

discussed those x-rays in finding that Daniels had a severe back impairment at the

initial level.[12] Taken together, these portions of the record suggest a substantial

possibility that Dr. Kidd's x-rays could provide "objective confirmation of an

impairment of the neck or back" that the ALJ found was otherwise completely

lacking.[13] However, there is no indication that the ALJ made any attempt to obtain

---

[12] Moreover, for what it's worth, the first ALJ to deny Daniels's applications, who also considered Dr. Kidd's report, found that Daniels had "back and neck disorder" and "neuropathy" as severe impairments. (Doc. 15, PageID.182). Of course, the undersigned in no way suggests that the ALJ was required to adopt either the SDM or the previous ALJ's determination that Daniels had a severe impairment. *See Riding v. Berryhill*, No. CV 17-00308-N, 2018 WL 2905742, at *6 (S.D. Ala. June 11, 2018) ("[T]he physical assessment was made by a 'single decisionmaker,' or 'SDM', a designation which 'connotes no medical credentials.' *Siverio v. Comm'r of Soc. Sec.*, 461 F. App'x 869, 871 (11th Cir. 2012) (per curiam) (unpublished) (citing 20 C.F.R. § 404.906(a), (b)(2)). As such, an SDM's decision is not a medical opinion entitled to any weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (per curiam) (unpublished) ('[A]s Cooper correctly notes, the ALJ mistakenly referred to the SDM as a doctor and should not have given any weight to her opinion because she was merely an SDM ...')."); *Mendez v. Comm'r of Soc. Sec.*, No. 20-14026, 2021 WL 3163765, at *3 (11th Cir. July 27, 2021) (per curiam) (unpublished) ("[B]ecause the 2013 decision was vacated by the Appeals Council, it no longer has any legal effect. *See United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (stating that vacated decisions 'are officially gone' and 'have no legal effect whatever'). Thus, the previous RFC finding did not bind the ALJ after remand.").

[13] Daniels also argues that Dr. Kidd's notation of a "positive straight leg raise on the left," which the ALJ noted in his decision (*see* Doc. 15, PageID.92), is itself a "sign" constituting objective medical evidence of a medically determinable impairment. This argument has some appeal. *See* 20 C.F.R. §§ 404.1502(f)-(g), 416.902(f)-(g) ("Objective medical evidence means signs, laboratory findings, or both...Signs means one or more

those x-rays, recontact Dr. Kidd (or even the SDM) to get clarification on the issue, obtain (as Daniels suggests) an additional consultative examination, or otherwise resolve this "material conflict" in the record before rendering his decision.

Dr. Kidd's x-rays may not actually exist. If they do exist, they may not reveal any abnormality that would support finding a medically determinable impairment. And even if they do reveal some abnormality, the ALJ may resolve this inconsistency in the evidence in favor of the many other normal imaging results in the record that he did discuss (after all, an ALJ's factual findings need only be supported by substantial evidence, even if the evidence preponderates against them). However, given that the ALJ expressly relied on a lack of "*any* objective confirmation of an impairment of the neck or back" (emphasis added) in finding no medically determinable impairment related to Daniels's numerous complaints of pain, that the ALJ found no other severe impairment at Step Two, and that a claimant has only a "mild" burden to show at least one severe impairment at Step Two, the ALJ had a duty to follow up on the issue of Dr. Kidd's x-rays before finding that Daniels had

---

anatomical, physiological, or psychological abnormalities that can be observed, apart from your statements (symptoms). Signs must be shown by medically acceptable clinical diagnostic techniques."); Gaston O. Camino Willhuber & Nicolas S. Piuzzi, *Straight Leg Raise Test*, StatPearls [Internet] (last updated July 31, 2021) (https://www.ncbi.nlm.nih.gov/books/NBK539717/#article-29514.s2 (last visited Mar. 29, 2022)) ("The straight leg raise test, also called the Lasegue test, is a fundamental maneuver during the physical examination of a patient with lower back pain. It aims to assess for lumbosacral nerve root irritation. This test can be positive in a variety of conditions, though lumbar disc herniation is the most common. Other causes of a positive straight leg raise test include facet joint cysts or hypertrophy."). However, because the Commissioner's final decision is already due to be reversed on the issue of Dr. Kidd's x-rays, the undersigned declines to further address the positive straight leg raise issue.

failed to meet that burden. The ALJ's failure to do so constitutes reversible error.[14]

Accordingly, the Commissioner's final decision denying Daniels's applications for benefits is due to be **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of § 405(g) for further administrative proceedings.

## V.    *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Daniels's September 25, 2015 DIB and SSI applications is **REVERSED**, and this cause **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision. This remand under sentence four of § 405(g) makes Daniels a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292, 113 S. Ct. 2625, 125 L. Ed. 2d 239 (1993), and terminates this Court's jurisdiction over this matter.

Under Federal Rule of Civil Procedure 54(d)(2)(B), the Court hereby grants Daniels's counsel an extension of time in which to file a motion for fees under 42

---

[14] In light of this finding, the undersigned declines to consider Daniels's additional claims that the ALJ reversibly erred by rejecting the medical opinions of Dr. Kidd and Dr. Mims, and by failing to order an additional consultative examination. *See Pupo*, 17 F.4th at 1066 n.4 ("Pupo's remaining issues on appeal challenge the ALJ's decision to not give controlling weight to her doctors' opinions and finding that her mental impairments did not meet a listed impairment. Because we remand on two of her other issues, we offer no opinion as to whether the ALJ erred in these regards. On remand from the district court, the ALJ is to reconsider Pupo's claim based on the entire record."). This should not hamper effective appellate review of this decision, if any. *See Henry*, 802 F.3d at 1267 ("Our review is the same as that of the district court, meaning we neither defer to nor consider any errors in the district court's opinion…" (citation and quotation omitted)).

U.S.C. § 406(b) until 30 days after the date of receipt of a notice of award of benefits from the SSA, should Daniels be awarded benefits on the subject applications following this remand.[15] Consistent with 20 C.F.R. § 422.210(c), "the date of receipt of notice … shall be presumed to be 5 days after the date of such notice, unless there is a reasonable showing to the contrary." If multiple award notices are issued, the time for filing a § 406(b) fee motion shall run from the date of receipt of the latest-dated notice.

Final judgment shall issue separately hereafter in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 29th day of March 2022.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[15] *See Bergen v. Comm'r of Soc. Sec.*, 454 F.3d 1273, 1277 (11th Cir. 2006) (per curiam) ("Fed. R. Civ. P. 54(d)(2) applies to a § 406(b) attorney's fee claim."); *Blitch v. Astrue*, 261 F. App'x 241, 242 n.1 (11th Cir. 2008) (per curiam) (unpublished) ("In *Bergen v. Comm'r of Soc. Sec.,* 454 F.3d 1273 (11th Cir. 2006), we suggested the best practice for avoiding confusion about the integration of Fed. R. Civ. P. 54(d)(2)(B) into the procedural framework of a fee award under 42 U.S.C. § 406 is for a plaintiff to request and the district court to include in the remand judgment a statement that attorneys fees may be applied for within a specified time after the determination of the plaintiff's past due benefits by the Commission. 454 F.3d at 1278 n.2.").